UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| GREGORY ALAN COUSINO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-784 |
| | ) | |
| v. | ) | HON. JANET T. NEFF |
| | ) | |
| COMMISSIONER OF | ) | **OPINION** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On September 20, 2010, plaintiff filed his applications for DIB and SSI benefits, alleging a July 9, 2009, onset of disability.[1] (Page ID 193-205). His disability insured status expired on June 30, 2011. Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before June 30, 2011. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

---

[1] Administrative *res judicata* arising from a decision dated July 8, 2009 (Page ID 124-32), barred any onset of disability date before July 9, 2009. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). Further, SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, October 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff's claims for DIB and SSI benefits were denied on initial review. (Page ID 93-118). On January 20, 2012, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (Page ID 62-91). On February 3, 2012, the ALJ issued his decision finding that plaintiff was not disabled. (Op., Page ID 50-58). On May 22, 2013, the Appeals Council denied review (Page ID 32-35), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ failed to follow the treating physician rule and failed to properly determine plaintiff's residual functional capacity; and

2. The ALJ failed to properly evaluate plaintiff's credibility.

(Plf. Brief at 5, 9, docket # 12, Page ID 359, 363).  The Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th

Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from July 9, 2009, through June 30, 2011, but not thereafter. (Op. at 3, Page ID 52). Plaintiff had not engaged in substantial gainful activity on or after July 9, 2009. (*Id.*). Plaintiff had the following severe impairments: "degenerative disc disease, spinal spondylosis, lumbar spine."[2] (*Id.*). Plaintiff

---

[2]Plaintiff testified that he drank approximately 10 beers per day and that he had been drinking that much on a daily basis for about 30 years. (Page ID 67-68). Since 1996, the Social Security Act, as amended, has precluded awards of DIB and SSI benefits based upon alcoholism

did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (Op. at 6, Page ID 55). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except claimant is limited to only occasional bending, twisting, overhead work, and reaching beyond 18 inches from his trunk. He is also limited to only occasional fine manipulation on the right.

(Op. at 6, Page ID 55). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (Op. at 6-7, Page ID 55-56). Plaintiff could not perform any past relevant work. (Op. at 8, Page ID 57).

The ALJ turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with his RFC, education, and work experience, the VE testified that there were approximately 3,480 jobs in Michigan' Lower Peninsula that the hypothetical person would be capable of performing. (Page ID 86-87). The ALJ found that this constituted a significant number of jobs. Using Rules 201.28 and 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (Op. at 8-9, Page ID 57-58).

**1.**

---

and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d at 380.

Plaintiff argues that the ALJ failed to follow the treating physician rule and failed to properly determine plaintiff's RFC. (Plf. Brief at 5-9, Page ID 359-63). Administrative *res judicata* stemming from the final administrative decision dated July 8, 2009 (Page ID 124-32), barred any onset of disability before July 9, 2009. In the earlier decision, an ALJ found that plaintiff retained the RFC to perform a limited range of sedentary work. (Page ID 127). Under the rule of *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and its progeny, the ALJ was required to "adopt and be bound by the finding of the claimant's residual functional capacity or other findings required at a step of the sequential evaluation process." *Caudill v. Commissioner*, 424 F. App'x 510, 514 (6th Cir. 2011); *see Schmiedebusch v. Commissioner*, 536 F. App'x 637, 646 (6th Cir. 2013). The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514.

A. <u>Evidence Generated After July 8, 2009, and Before February 4, 2012</u>

Plaintiff presented very limited medical evidence for the periods at issue.[3] (Page ID 308). On September 20, 2010, Dr. Jones completed a Multiple Impairment Questionnaire. (Page ID 248-54). He incorporated a number of work-preclusive restrictions, such as an estimate that his patient who was not working would likely be absent from work more than three times a month, and claimed that such restrictions had been in place since "November 2006." (*Id.*).

---

[3] Evidence that plaintiff presented to the Appeals Council cannot be considered where, as here, the Appeals Council denied review. The court's decision must be based on the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478. Plaintiff has not presented any argument claiming that he is entitled to a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g).

On December 22, 2010, x-rays of plaintiff's cervical spine showed no evidence of acute cervical fracture or malalignment. It showed degenerative disc disease with "mild" cervical spondylosis at C5-C6 and C6-C7 levels. There was no evidence of pathologic subluxation or instability on flexion and extension views. (Page ID 301-02). X-rays of plaintiff's lumbar spine showed no evidence of acute cervical fracture or malalignment. There was a narrowing of the L5-S1 disc spaces with subchondral sclerosis and spurring consistent with degenerative disc disease. Alignment of the lumbar vertebrae appeared normal. The x-rays showed degenerative disc disease at L4-L5 and L5-S1 disc space levels with spondylosis. (Page ID 302).

On January 3, 2011, Bhatari Sachdev, M.D., performed a consultative examination. (Page ID 292-93). Plaintiff's chief complaints were lower back pain with right leg numbness. (Page ID 292). Plaintiff reported that on March 22, 2006, Dr. Kottcha performed a diskectomy on his lower back. (*Id.*). Plaintiff stated that he had a history of hypertension. He related that a week before this examination he had been examined by Dr. Lee, an orthopedic surgeon. Dr. Lee determined that no repeat studies were necessary and referred plaintiff to a physical rehabilitation clinic. (*Id.*). He indicated that his current medications were Extra Strength Vicodin, Motrin, Flexeril, Ativan, and Lopressor. Plaintiff reported no side effects from these medications. (*Id.*). Plaintiff reported that he had smoked between 1.5 and 2 packs of cigarettes per day for 28 years. (*Id.*). Plaintiff stated that he had a history of cocaine use and that his most recent cocaine use had been three years earlier. (Page ID 293). Plaintiff stated that he drank "8-10 beers five days a week for 25 years." (*Id.*). He was alert and oriented in all three spheres. He weighed 201.2 pounds. His extremities showed no evidence of clubbing or edema. Plaintiff's motor system bulk, tone, and strength in his upper and lower extremities were all normal. There was no evidence of sensory deficits. Plaintiff's reflexes

were normal. His cervical range of motion was normal. He had a reduced range of motion in his lumbar spine. He had a normal range of motion in all other joints, including his hips and knees. His straight leg rasing tests were negative. (*Id.*). Dr. Sachdev recommended that plaintiff avoid weight gain and participate in the physical therapy that Dr. Lee had recommended. He indicated that plaintiff needed counseling and rehabilitation for his nicotine and alcohol dependence. He indicated that plaintiff's depression was situational and his hypertension was stable. (*Id.*).

On January 3, 2011, Psychologist Thomas M. Horner conducted a consultative psychological examination. (Page ID 294-98). Plaintiff reported that he had no history of psychiatric hospitalizations. (Page ID 294). Plaintiff listed his medications as Flexeril, Ibuprofen, Vicodin, Ativan, and Metoprol. (*Id.*). He reported that his father had recently died. Plaintiff stated that he dropped out of school in the tenth grade, but later obtained his GED. (*Id.*). Plaintiff had not looked for work since his back surgery in March 2006. (Page ID 295). Plaintiff acknowledged having a history of alcohol and drug abuse and related legal problems. (Page ID 295). Plaintiff did not experience hallucinations or delusions. He provided for his own personal care. His gait and speech were normal. He was oriented in all three spheres. Plaintiff was articulate and his attention and concentration were focused and sustained. He appeared to be of low normal intelligence. (Page ID 295-97). Psychologist Horner offered a diagnosis of depression in relation to recurring pain and alcoholism, mild, continuing. (Page ID 297). Psychologist Horner's report ended with the following paragraph:

> Mr. Cousino's ability to relate to others, including coworkers, customers/clients, and supervisors is essentially intact. His abilities to understand, remember and carry out familiar tasks are essentially intact. His ability to focus and sustain attention to relevant occupational tasks is similarly intact and operational. Mr. Cousino's ability to withstand or otherwise cope with the stresses of ordinary occupational activity is intact but for his physical health. Outside of the actual physical health conditions of

>   which he complains, Mr. Cousino would be able and reasonably motivated to engage
>   in work activity.

(Page ID 298).

On January 3, 2011, an MRI taken of plaintiff's lumbosacral spine revealed that plaintiff's vertebral body heights were well preserved.  There was no evidence of acute lumbar or sacral fracture.  There was a narrowing of the L3-L4, L4-L5, and L5-S1 disc interspaces with spurring consistent with degenerative disc disease.  There was an osteophyte involving the superior endplate of L5 anteriorly.  The remaining disc spaces were well maintained.  There was no evidence of spondylolysis or spondylolisthesis.  Bhaskar Shenai, M.D., gave a diagnosis of degenerative disc disease with spondylosis from L3-L4 through L5-S1 disc space level, greater at L4-5 and L5-S1.  (Page ID 299-300).

### B. Treating Physician Rule

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1) 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted

at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Administrative *res judicata* stemming from the final administrative decision dated July 8, 2009, barred any onset of disability before July 9, 2009. In the earlier decision, an ALJ found that plaintiff retained the RFC to perform a limited range of light work. Under the rule of *Drummond v. Commissioner* and its progeny, the ALJ was required to "adopt and be bound by the finding of the claimants residual functional capacity or other findings required at a step of the sequential evaluation process." *Caudill v. Commissioner*, 424 F. App'x at 514; *see Schmiedebusch v. Commissioner*, 536 F. App'x at 646. The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514. The ALJ gave appropriate consideration to all the evidence generated after the earlier decision, including Dr. Jones's opinions regarding plaintiff's RFC and ability to work.[4] The issues of RFC and disability are reserved to the Commissioner. No special significance attached to the treating physician's

---

[4] Dr. Jones had suggested similar work-preclusive restrictions in documents filed in support of plaintiff's earlier claims for DIB and SSI benefits. (Page ID 130).

opinions on issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3). The ALJ's general adoption of the RFC from the earlier administrative decision was entirely appropriate. *See Lester v. Social Security Admin.*, No. 14-5582, __ F. App'x __, 2015 WL 73601, at * 1 (6th Cir. Jan. 7, 2015). There is no evidence in this record of any significant deterioration in plaintiff's condition following the July 8, 2009 decision denying his earlier claims for DIB and SSI benefits.

**2.**

Plaintiff argues that the ALJ failed to properly evaluate his credibility. (Plf. Brief at 9-12, Page ID 363-66). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while

testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was not fully credible. (Page ID 55-57). The record did not support the level of limitation that plaintiff claimed. Plaintiff's credibility was undermined by the absence of significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008). Plaintiff's infrequent visits with his physician were inconsistent with the purported intensity of his symptoms. (Page ID 56). *See Keeton v. Commissioner*, 583 F. App'x 515, 532-33 (6th Cir. 2014). Plaintiff continued to live alone and maintain his residence. (Page ID 56). His daily activities undercut his claims of disabling limitations. It was appropriate for the ALJ to take plaintiff's daily

activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Keeton v. Commissioner*, 583 F. App'x at 532 ("Although the ability to do household chores is not direct evidence of an ability to do gainful work, an ALJ may consider household and social activities engaged in by the claimant in evaluating a claimants assertions of pain or ailments.") (citations and quotations omitted).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated: March 24, 2015        /s/ Janet T. Neff
                             JANET T. NEFF
                             United States District Judge